**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SANTOKH SOHOL,** *individually and on behalf of all people similarly situated,* <br><br> Plaintiff, <br><br> vs. <br><br> **ELLIS YAN, et al.,** <br><br> Defendants. | CASE NO.    1:15-cv-00393-DAP <br> MEMBER CASE NOS. <br>     1:15-cv-00398-DAP <br>     1:15-cv-00917-DAP <br><br> **JUDGE DAN AARON POLSTER** <br><br> **OPINION AND ORDER** |

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  For the reasons stated herein, the Court grants the Motion to Dismiss and dismisses the above-captioned case with prejudice.

**I.     Background**

  **A.     Factual**

According to the Second Amended Consolidated Class Action Complaint ("SAC"), Doc #: 45, in the late-1980s and 1990s, Defendant Ellis Yan ("Yan") and his brother began developing, manufacturing, and assembling lighting products in China and formed TCP International Holdings, Ltd. ("TCP" or "TCPI"), a company focused on lighting.  SAC ¶ 38.  In

1996, TCP introduced a ground-breaking energy efficient compact fluorescent lamp ("CFL"). *Id.* at ¶¶ 38–40. Over time, TCP broadened the market with more advanced designs and other technological improvements. *Id.* It boosted production and earned a "Best in Class" recognition for its first generation LED. *Id.* at ¶ 40.

On April 9, 2014, TCP filed "a Draft Registration Statement on Form S-1 with the SEC" in order to become a public company. *Id.* at ¶ 41. Ultimately, on June 25, 2014, after several amendments, the Registration Statement was deemed effective, and, on June 26, immediately after the initial public offering ("IPO"), more than 27 million common shares were available on the New York Stock Exchange. *Id.* at ¶¶ 41–42. The Prospectus was then filed with the SEC on June 27. *Id.* at ¶ 43.

The SAC alleges that the Registration Statement and Prospectus made misrepresentations and failed to disclose certain material facts. Specifically, the SAC alleges that the Registration Statement and Prospectus included misleading misstatements regarding Underwriters Laboratory ("UL") and Energy Star approval of products. *Id.* at ¶¶ 48–53. These misstatements were revealed beginning on February 26, 2015, when Laura Hauser, an officer at TCP, filed a lawsuit against TCP and related parties. *Id.* at ¶ 48. Citing to Hauser's complaint, the SAC alleges that Yan, among other things, knowingly took "unilateral action and disregard[ed] the need for fact-based decision-making," "limited visibility of financial information and accountability," and caused TCP to bypass regulatory and supplier certification processes. *Id.* at ¶ 56. The SAC also alleges that TCP, with Yan "at the helm," utilized "golden samples" for testing purposes. *Id.* at ¶ 45. Relatedly, the SAC alleges that Yan instructed employees to disregard quality assurance and control processes. *Id.* at ¶¶ 44–45. In response to Hauser's lawsuit, TCP's share price

dropped dramatically to a value approximately 75% less than the IPO price.  *Id.* at ¶ 70.

### B. Procedural

On March 2, 2015, and March 5, 2015, three related cases were filed in the United States District Courts for the Northern District of Ohio and the Southern District of New York.  *See* Opinion and Order 1–2, Doc #: 35.  These three cases were consolidated into one case before this Court, with the City of Warren appointed Lead Plaintiff ("Plaintiff").[1]  *Id.* at 3.  Consequently, Plaintiff was directed to file a Consolidated Complaint.  *Id.*  The Consolidated Amended Complaint ("CAC"), Doc #: 36, was filed on June 12, 2015, and alleged that the Registration Statement and Prospectus issued by TCP pursuant to its June 2014 IPO contained material misstatements or omissions in violation of federal securities laws.

On June 20, 2015, Defendants TCP, Yan, Brian Catlett, Deutsche Bank Securities Inc., Piper Jaffray & Co., Canaccord Genuity Inc., and Cowen and Company, LLC (collectively, "Defendants")[2] filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Def.'s [First] Mot. to Dismiss, Doc #: 39.  This Court held that the CAC was deficient and granted leave to amend.  Opinion and Order 7, Doc #: 43.  Plaintiff filed the SAC on October 28, 2015.  Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants have moved to dismiss the SAC.  Def.'s Mot. to Dismiss, Doc #: 48.

### II. Legal Standard

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must allege sufficient facts to compose "a

---

[1] The other named Plaintiffs to these actions include Santokh Sohal, Daniel V. Leach, Jr., and Tim Williams.

[2] The following Defendants were previously included in the CAC but not included in the SAC: Solomon Yan, Jurgen Borgt, and Matthias Belz.  CAC ¶¶ 11–14.

short and plain statement of the claim showing that the pleader is entitled to relief." In evaluating a Rule 12(b)(6) motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and accept the complaint's allegations as true, drawing all reasonable inferences in favor of the plaintiff. *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the plausibility requirement is not a heightened or "probability" pleading requirement, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.*

Under Fed. R. Civ. P. 9(b), there is a heightened pleading requirement for actions sounding in fraud: "a party must state with particularity the circumstances constituting fraud or mistake." This includes identifying the "who, what, when, where, and how" of the alleged fraud. *Bondali v. Yum! Brands, Inc.*, 620 Fed. App'x 483, 488–89 (6th Cir. 2015) (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). Actions for securities fraud under Section 10(b) or Rule 10b-5 of the Exchange Act must also satisfy the scienter standard set forth by the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u-4(b)(2)(A).

**III.    Analysis**

In the SAC, Plaintiff alleges five counts: Violation of Sections 11, 12(a)(2), and 15 of the Securities Act (Counts I–III), and Violation of Section 10(b) (and Rule 10b-5 promulgated

-4-

thereunder) and 20(a) of the Exchange Act (Counts IV and V). SAC ¶¶ 22–25. The Court addresses each count in turn.

### A. Counts I and II (Violation of Section 11 and 12(a)(2) of the Securities Act)

Sections 11 and 12(a)(2) of the Securities Act create private causes of action based on misleading statements, misstatements, or omissions in a registration statement or prospectus, respectively. *J&R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 389 (6th Cir. 2008) (citing 15 U.S.C. §§ 77k(a), 77*l*(a)(2)). Section 11 imposes liability on issuers and other signatories of a registration statement when "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); *accord J&R*, 549 F.3d at 390. Section 12(a)(2) operates in a similar manner with respect to prospectuses. 15 U.S.C. § 77*l*(a)(2); *J&R*, 549 F.3d at 390.

The element at issue with respect to the Section 11 and 12(a)(2) claims is whether the statements were misleading at the time they were made. To constitute misrepresentation under Section 11 and 12(a)(2), a statement must have been untrue at the time it was made (or, in the case of an omission, known to the Defendants at the time it was omitted). Plaintiff claims that Defendants made material misrepresentations in the Registration Statement and Prospectus filed in anticipation of the June 2014 IPO. Therefore, in order to demonstrate misrepresentation, Plaintiff must first allege wrongdoing that occurred prior to the IPO (i.e., before the Registration Statement and Prospectus were filed) for the Defendants to misrepresent or omit in the Registration Statement and Prospectus.

This Court held, in its September 2015 Order, that the CAC was deficient in that Plaintiff

failed to "describe any wrongful acts *prior to the IPO*, the falseness of any statements *when made*, and any independent investigation which [had] been done in preparing the Complaint." Order 5, Doc #: 43 (emphasis added). Specifically, the Court found no wrongful acts in the CAC that were alleged to have occurred prior to the IPO, which would necessarily be required for the misrepresentation element of the Section 11 and 12(a)(2) claims. In amending, Plaintiff added the following allegations to the SAC in an attempt to address this deficiency:

> 45. Specifically, the Company utilized "golden samples" for testing purposes. A "golden sample" is used in the lighting industry to refer to a sample product that has been built and tested to ensure that it will receive UL certification. It is supposed to be representative of the product that will later be mass produced once it is approved. It is improper to knowingly build a superior sample in order to receive UL listing if the mass produced product will be inferior. With Defendant Yan at the helm, however, TCPI used "golden samples" made with quality material (and presumably, more likely to meet industry standards and perform well when tested), but then used inferior materials when the products were mass produced.
>
> . . .
>
> 47. The fact that TCPI was building products before the proper UL certifications had been received was a topic of various discussions within the Company; in fact, Defendant Yan directed team members on several occasions to begin building products prior to receipt of UL certifications. Meeting attendees would question the legality of Defendant Yan's directive. They would further comment that building products prior to the receipt of UL listings or appropriate certifications "should not be done." Notwithstanding, whether building products prior to receiving UL certifications was proper and/or legal was of no moment to Defendant Yan, who took the view that it could be done and should be done.
>
> . . .
>
> 81. The statements in the Offering Materials were materially misleading because they failed to disclose that: (a) the Company was manufacturing "high quality" and "energy efficient" lighting fixtures

-6-

>and labeling those products with UL and Energy Star® approval when no such approvals had been received; (b) as would later be revealed, Defendant Yan was circumventing corporate policies that impacted the manufacturing and quality control processes of these products which undermined the Company's standards and practices, such as "[b]ypassing regulatory (UL, CE, EnergyStar [sic], etc.) and supplier certification processes," and "[o]verriding and/or disregarding Company policies on matters such as…product design and safety certification;" (c) as the Company would ultimately admit in its 2014 10-K, Defendant Yan's "actions were inconsistent with setting an appropriate tone at the top by failing to adhere to the Company's established policies and procedures;" (d) Defendant Yan's improper "tone at the top" predated both the IPO and the *Hauser* Action, as was memorialized in the police report filed by Hauser following an acrimonious meeting with Defendant Yan regarding his misconduct, which details Defendant Yan's "explosive" temper; and (e) the material weaknesses in its internal controls.

SAC ¶¶ 45, 47, 81 (alterations in original). Plaintiff also attached a police report filed with the Cleveland Heights Police Department describing an altercation between Yan and Hauser. SAC Ex. B. In the police report, Hauser described Yan's "explosive" temper and "anger and aggression." *Id.* The alleged incident occurred on February 3, 2015, and the report was completed on February 5, 2015. *Id.* Based on the statements contained in this police report, Plaintiff alleges that Yan's improper "tone at the top" predated both the IPO and the *Hauser* Action. *Id.* at ¶ 81. Plaintiff also argues that the *Hauser* Action "describes several instances of Yan's misconduct"—discussed in detail below— that predate the IPO. Pl.'s Mem. 8.

The Court finds that these allegations fail to cure the deficiencies in the CAC. First, the SAC's few allegations of actions that *do* predate the IPO amount at most to mere corporate mismanagement and are inactionable under the securities laws. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977); *James v. Gerber Prods. Co.*, 483 F.2d 944, 950 (6th Cir. 1973) (holding that it was consistent with Supreme Court case law to "exclude corporate

mismanagement suits unrelated to securities transactions in the federal courts"). Plaintiff alleges that the following two sets of facts predate the IPO: (1) "several instances of Yan's misconduct" detailed in the *Hauser* Action (including Hauser's October 2013 concerns about "certain business practices and recommended changes" and Yan's "verbally abusive and demeaning" attitude toward Hauser and other senior management), and (2) Yan's improper tone at the top (namely, his "explosive" temper noted in Hauser's February 2015 police report). Pl.'s Mem. 8–9; SAC Ex. A at ¶ 14. Plaintiff asserts that both of these problems "ran deep and clearly did not manifest overnight." *Id.* at 9. Finally, Plaintiff argues that several post-IPO facts "support an inference that the alleged problems existed at the time of the IPO," including TCP's admission of a material weakness in its internal controls in its 2014 10-K, and the Audit Committee's investigation in December 2014. *Id.*

The Court finds that the above allegations do not give rise to a materially misleading statement or omission. A CEO's improper tone at the top and "verbally abusive and demeaning" attitude may constitute corporate mismanagement but are not actionable under the securities laws. *Id.*; SAC Ex. A at ¶ 14. Moreover, Hauser's concerns about Yan's business practices are similarly inactionable and pertain only to corporate mismanagement, not misleading statements or omissions under Sections 11 and 12(a)(2). *Id.* Therefore, the above instances of alleged corporate mismanagement are not relevant to this action.

Similarly, the Court finds that Plaintiff's use of the police report describing Yan's "explosive" temper is unavailing. SAC Ex. B. The allegations contained in the police report—namely, that Yan had an "explosive" temper on "many occasions"—are strikingly similar to statements regarding Yan's improper tone at the top and attitude towards others in the

company. *Id.* Notably, the police report also alleges nothing transpiring prior to the IPO. Rather, the report itself is dated February 5, 2015, and describes an incident from February 3, 2015. *Id.* Even if the incident described in the police report was relevant to these claims (i.e., amounted to more than mere corporate mismanagement), Plaintiff alleges no facts in the SAC from which the Court can reasonably infer that similar incidents occurred nearly one year prior.

Second, despite the Court's guidance, Plaintiff adds no wrongful acts that are alleged to have predated the IPO. Absent such allegations, there is no wrongdoing for the Defendants to have misrepresented or omitted in the June 2014 Registration Statement and Prospectus. Certain allegations contained in SAC ¶¶ 45–47 might be material if they had occurred prior to the IPO. For example, the use of "golden samples," if occurring prior to the IPO, may have been material to an investor. SAC ¶ 45. However, there is no indication—and the Court cannot infer from the facts alleged in the SAC—that such conduct predated the IPO. Plaintiff includes no relevant dates to indicate that any of these events occurred prior to the IPO, as required for the Section 11 and 12(a)(2) claims, or even a general, non-date-specific allegation that such events occurred pre-IPO. Paragraph eighty-one of the SAC is telling: Plaintiff alleges four categories of wrongdoing, but only one—the inactionable "tone at the top"—is alleged to have predated the IPO. As Defendants correctly observe, Plaintiff fails to allege that Defendant E. Yan "circumvented manufacturing and quality control processes *prior to the IPO*, or that the Company experienced a material weakness in financial reporting *prior to the IPO*." Def.'s Mem. 10; Doc #: 48-1 (emphasis added). Rather, Plaintiff asks the Court to infer that "the alleged problems existed at the time of the IPO, rendering the Offering Materials false and misleading." Pl.'s Mem. 9. However, there are simply no facts alleged in the SAC to support such an inference. Thus, the

Plaintiff's amendment does not cure the CAC's deficiencies.

In sum, the SAC alleges very few instances of any actions prior to the IPO, and what it does allege is not material. Absent any wrongdoing prior to the IPO, the Defendants could not have made material misrepresentations or omissions in the Registration Statement and Prospectus, as is required under Sections 11 and 12(a)(2). While the Court may make plausible inferences in Plaintiff's favor, it is again inadequate to ask the Court to infer that the potentially material activities predated the IPO "without allegations of fact supporting such an inference." Order 5, Doc #: 43.

Plaintiff was given leave to amend with explicit instructions to cure this deficiency. However, Plaintiff has not—and, it appears, is unable to—plead any wrongdoing prior to the IPO. Thus, the SAC fails to establish the Section 11 and 12(a)(2) "misleading statements, misstatements, or omissions" element. For this reason, Counts I and II of the SAC are dismissed.

### B. Count III (Violation of Section 15 of the Securities Act)

As the Court noted in its previous Order, Count III rises or falls with Counts I and II. Order 6, Doc #: 43. Defendants again argue that Plaintiff's cause of action for control person liability under Section 15 of the Securities Act "must be dismissed because it stands or falls, as a pleading matter, with the Section 11 and 12 claims." Def.'s Mem. 16. The Court again notes that Plaintiff does not dispute Defendants' statement of the law (though Plaintiff does, obviously, dispute Defendants' conclusion). *See* Order 6, Doc #: 43. The Court agrees with Defendants' observation as well. Because Count III falls with Counts I and II, Count III of the SAC is also dismissed.

### C. Count IV (Violation of Section 10(b) and Rule 10b-5 of the Exchange Act)

As an initial matter, the Court holds that Plaintiff is not precluded from adding new claims to the SAC. Defendants argue that the addition of Counts IV and V "exceeded the scope of this Court's grant of leave to amend, and should therefore be considered a motion for leave to amend," asserting that leave to file these claims would be futile. Def.'s Mem. 16–19. Because the Court's leave to amend was broad,[3] the Court finds that Plaintiff is entitled to add Counts IV and V. Therefore, Court construes Defendants' argument as a move to dismiss the claims under Fed. R. Civ. P. 12(b)(6).

To state a claim under Section 10(b) and Rule 10b-5, Plaintiff must establish the following elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). "Allegations of securities fraud must, as must allegations of fraud generally, satisfy the requirements of Rule 9(b)" as well. *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citing Fed. R. Civ. P. 9(b)). In addition, Plaintiff must satisfy the standard set forth by the PSLRA. *Id.* at 548–49. Under the PSLRA, a Section 10(b) or Rule 10b-5 claim must, with respect to each actionable statement, allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [i.e., scienter]." 15 U.S.C. §

---

[3] The Court's leave to amend stated, "Plaintiff shall have fourteen days from the date of this order to file a Second Amended Complaint that *addresses the deficiencies in the Complaint*." Order 7 (emphasis added). Nothing in this leave to amend suggests that Plaintiff cannot add new claims to address said deficiencies.

78u-4(b)(2)(A).

At issue here are elements (1) and (2) of the 10(b) and 10b-5 action. As Plaintiff correctly observes, Defendants do not dispute element (2) as to Defendant E. Yan or elements (3), (4), (5), and (6) as to all TCP Defendants. Pl.'s Mem. in Opp. 18–19, Doc #: 50. Therefore, the Court first addresses whether Plaintiff has adequately pled element (1) as to all TCP Defendants.

For the same reasons discussed previously, *supra* Section III.A, Plaintiff's fourth cause of action fails to state a claim. As with the Securities Act claims, the Plaintiff does not allege material facts or events that occurred prior to the IPO, and therefore fails to establish a material misrepresentation or omission.[4] As Defendants observe, the SAC alleges "fraud by hindsight: Plaintiff seeks an unjustifiable inference that an admission of a material weakness at one point in time must mean the material weakness existed earlier in time." Def.'s Rep. Br. 12, Doc #: 52.

As Plaintiff fails to adequately plead the crucial first element of a 10(b) and 10b-5 cause of action, the Court need not discuss the scienter element as to Defendant Catlett. Count IV is dismissed.

### E. Count V (Violation of Section 20(a) of the Exchange Act)

Section 20(a) of the Exchange Act creates a cause of action for control person liability. 15 U.S.C. § 78t(a). Pursuant to this provision,

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the

---

[4] The Court notes that these allegations are insufficient to meet the *Iqbal* and *Twombly* standard, let alone the Fed. R. Civ. P. 9(b) and PSLRA standards.

> controlling person acted in good faith and did not directly or indirectly induce that act or acts constituting the violation or cause of action.

*Id.* The Sixth Circuit has held that Section 20(a) claims "are predicated upon at least one underlying violation committed by a controlled party." *Frank v. Dana Corp.*, 646 F.3d 954, 962 (6th Cir. 2011). Finally, claims under Section 20(a) also sound in fraud and must meet the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA. *In re Comshare*, 183 F.3d at 548.

As with Count III, Count V rises or falls with another claim in this case—namely, the underlying violation of Rule 10(b) alleged in Count IV of the SAC. Because the Court finds that Plaintiff has not adequately plead an underlying violation of Section 10(b) and Rule 10b-5, the cause of action under Section 20(a) does not stand. Therefore, Count V is dismissed.

**F. Prejudice**

Defendants have requested dismissal with prejudice. "[W]here a more carefully drafted complaint might state a claim," a court should not dismiss a claim with prejudice. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (internal citations and quotation marks omitted). In the instant case, however, Plaintiff has had ample opportunities to cure the aforementioned pleading deficiencies "by amendments previously allowed." *Id.* In fact, the Court instructed in the prior order that it is "generally the Court's practice to permit a plaintiff to amend a deficient complaint *one time*," and "[a]bsent exceptional circumstances, Plaintiff [would] not be granted further opportunity to correct the deficiencies in the Complaint." Order 7, Doc #: 43 (emphasis added). Because it appears that Plaintiff is unable to plead wrongdoing prior to the IPO, and thus cannot establish that any statements were untrue at the

time they were made, the Court determines that further amendment would necessarily be futile and dismisses the action with prejudice for failure to state a claim, per Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

For the reasons set forth herein, the Court **GRANTS** Defendants' Motion to Dismiss, Doc #: 48, for failure to state a claim upon which relief can be granted, and dismisses the action with prejudice.

**IT IS SO ORDERED.**

                                         */s/ Dan A. Polster     Feb. 25, 2016*
                                         **DAN AARON POLSTER**
                                         **UNITED STATES DISTRICT JUDGE**