**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SANTOKH SOHOL, individually and on behalf of all people similarly situated,** ) ) ) | **Case No. 1:15-cv-00393** |
| **Plaintiffs** ) ) ) | **Judge Dan Aaron Polster** |
| vs. ) ) | **OPINION AND ORDER** |
| **ELLIS YAN, et al.,** ) ) ) | |
| **Defendants.** | |

Before the Court is Plaintiff's Motion to Reconsider and Set Aside, Alter, Amend, or Vacate Judgment pursuant to Federal Rules 59(e), 60(b)(1), and/or 60(b)(6) (**Doc. #: 55**). Defendants have opposed the motion (Doc. #: 56), and Plaintiff has replied.  (Doc. #: 57). Plaintiff argues, correctly, that the Court's previous order granting Defendants' motion to dismiss Plaintiff's Second Amended Complaint failed to address one of Plaintiff's claims, namely, that Defendants violated Section 10(b) and Rule 10b-5 of the Exchange Act when they made material misstatements or omissions in their post-IPO filings and statements.  Plaintiff maintains that these claims are adequately pled and should be allowed to proceed.

Plaintiff also argues that dismissal of Plaintiff's Securities claims was erroneous because the Court overlooked a critical allegation in the Second Amended Complaint and failed to give

Plaintiff the benefit of all reasonable inferences in relation to Defendants' pre- and post-IPO conduct.

After a careful reconsideration of the issues presented, the Court finds Plaintiff's arguments well-taken.  Plaintiff's Motion is accordingly granted, the Court's Judgment is vacated, and Plaintiff's Second Amended Complaint is reinstated.

### I. Factual and Procedural Background

In 1989, Defendant Ellis Yan ("Yan") and his brother began developing, manufacturing, and assembling lighting products, and, in 1993, TCP International Holdings, Ltd. ("TCP") was formed.  (Doc. #: 45, ¶38).  In 1996, TCP "introduced a groundbreaking energy efficient compact fluorescent lamp, the 'SpringLamp,' which revolutionized the residential lighting industry for the first time since Thomas Edison's invention of the light bulb."  (*Id.*, ¶38).

On April 9, 2014, TCP was preparing to make an Initial Public Offering ("IPO"), and it filed a Draft Registration Statement on Form S-1 with the SEC.  (*Id.*, ¶41).  On June 25, 2014, after several amendments, the Registration Statement was deemed effective, and, on June 26, 2014, more than 27 million common shares were available on the New York Stock Exchange.  (*Id.*, ¶¶41-42).  A Prospectus was filed with the SEC on June 27, 2104. (*Id.*, ¶43).

On February 26, 2015, TCP's now former General Counsel Laura Hauser sued TCP, one of its subsidiaries, and Defendant Yan in Cuyahoga Court of Common Pleas.  (*Id.*, ¶48).  That lawsuit, the allegations of which are described in more detail below, revealed numerous instances of alleged misconduct on the part of Defendant Yan.  (*Id.*, ¶¶49-58).  The market allegedly reacted swiftly to news of the *Hauser* lawsuit and, on February 27, 2015, TCP's share price dropped dramatically to 75% below the IPO price.  (Doc. #: 45, ¶70).

-2-

In turn, on March 2 and March 5, 2015, TCP shareholders filed three related securities class actions in the United States District Courts for the Northern District of Ohio and the Southern District of New York.[1]  The shareholder plaintiffs in all three cases asserted that Defendants made material false and misleading statements in the Registration Statement and Prospectus, in violation of the federal Securities laws.  On May 29, 2015, the three cases were consolidated before this Court.  (Doc. #: 35).  The City of Warren Police & Fire Retirement System ("City of Warren") was appointed Lead Plaintiff ("Plaintiff"), and Plaintiff was directed to file a Consolidated Complaint.  (*Id.*).

*A. Plaintiff's Consolidated Amended Complaint*

On June 12, 2015, Plaintiff filed a Consolidated Amended Complaint ("CAC").  (Doc #: 36).  The named Defendants included Corporate Defendant TCP and individual Defendants Ellis Yan (TCP's CEO) and Brian Catlett (TCP's CFO), who were signatories to the Company's Registration Statement.  Plaintiff also sued four underwriter defendants,[2] who allegedly participated in the drafting and dissemination of the Registration Statement.

The CAC alleges that the Registration Statement and Prospectus ("Offering Materials") issued by TCP pursuant to its June 2014 IPO contained material misstatements or omissions in violation of Section 11, Section 12(a)(2), and Section 15 of the Securities Act.  Specifically, the

---

[1] The first two cases, *Sohol v. Yan, et al.*, Case No. 1:15 CV 393 and *Williams v. Yan, et al*., Case No. 1:15 CV 398 ("Williams case") were filed on March 2, 2015, in the U.S. District Court for the Northern District of Ohio. The third case, Leach v. TCP, et al., was filed in the U.S. District Court for the Southern District of New York on March 5, 2015.

[2] Underwriter Defendants included Deutsche Bank Securities Inc., Piper Jaffray & Co., Canaccord Genuity Inc., and Cowen and Company, LLC.

Offering Materials allegedly included false or misleading statements regarding Underwriters Laboratory ("UL") and Energy Star approval of TCP's products.  (Doc. #: 36, ¶¶ 48-53).  Additionally, Plaintiff alleged numerous instances in which Defendants falsely stated their commitment to quality control and the production of high quality lighting products.

To support the claim that these statements were false or misleading, the CAC highlights the alleged irregularities that were revealed in the *Hauser* lawsuit.  (*Id.*, ¶¶54-60).  According to Plaintiff, at some point in 2014, Ms. Hauser learned that approximately 900,000 units of a LED lighting product had been improperly labeled with a UL certification.  (*Id.*, ¶¶54).  It was further alleged that in August 2014, 40,000 LED lamps designated specifically for the Cinemark movie theaters were manufactured with the UL mark, pursuant to Yan's direct order, before the lamps actually received UL listing approval.  (Doc. #: 36-2, ¶23).  Ms. Hauser allegedly brought these irregularities to the attention of the Board, and, in December 2014, an investigation was initiated by the TCP's Audit Committee. (Doc. #: 36, ¶¶54-56).

Following the investigation, the Audit Committee issued a memorandum stating that Defendant Yan had knowingly taken "unilateral action and disregard[ed] the need for factbased decision-making"; "limited visibility of financial information and accountability" causing TCP to bypass regulatory and supplier certification processes; and instructed employees to disregard quality assurance and control processes.  (*Id.*, ¶58).
Additionally, the Audit Committee determined

> [t]hat each of the matters addressed in its memorandum reflects [Defendant Yan's] unwise, inappropriate and/or unlawful decision-making. The Audit Committee advised [Defendant E. Yan] of the need for a proper 'tone at the top' of the organization; developing and relying upon sound, supportable financial plans and planning functions; requiring internal controls that are effective and not disregarded or overridden; ensuring proper focus by the Company on compliance with legal and regulatory requirements;

> maintaining the integrity of the Company's financial reporting; and in general making sure that there is a collaborative effort among each and every member of the executive management team to manage the Company's overall risk from multiple sources."

(*Id.*, ¶59).  The Audit Committee concluded "that the manner in which [Defendant Yan] had been operating the Company must change 'promptly and substantially,'" and it set forth directives that

> [n]o product destined for sale in the United States is to be manufactured or assembled by the Company or marketed with the UL logo unless and until [it] has been tested and received its UL listing certification, all in the normal course of business . . . . The same directive applies to the EnergyStar® program as well. . . . You have no authority to give, and are forbidden from giving, either directly or indirectly, any contrary instructions explicitly or implicitly

(*Id.*, ¶60).

On February 27, 2015, the company issued a press release announcing that the *Hauser* lawsuit had been filed against it.  (*Id.*, ¶61).  On March 2, 2015, the Company issued a second press release responding to the *Hauser* Action which also was filed with the SEC as an exhibit to the March 3, 2015 8-K, wherein it announced that it "takes these allegations seriously" and that "the one claim against TCP is without merit, and TCP intends to vigorously defend against it. (*Id.*, ¶62).  On April 15, 2015, the Company announced that Defendant E. Yan would be stepping down as CEO on June 30, 2015.  (*Id.*, ¶63).

### B. Defendants' First Motion to Dismiss

On July 20, 2015, Defendants filed a Motion to Dismiss for failure to state a claim upon which relief can be granted, arguing that the above allegations failed to support a plausible claim under the Securities Act.  (Doc. #: 39).  On September 30, 2015, this Court issued an Order granting Defendants' motion and holding that CAC failed to allege facts by which it could reasonably be inferred that statements made in the Registration Statement and Prospectus were

false or misleading at the time those statements were made. (Doc. #: 43). Specifically, the Court observed that

> Here, the Complaint does not allege facts (sufficient to meet the *Iqbal/Twombly* pleading standard) that describe any wrongful acts prior to the IPO, the falseness of any statements when made, and any independent investigation which have been done in preparing the Complaint. While the Court must make plausible inferences in Plaintiff's favor, it is inadequate to simply describe events occurring after the IPO and ask the Court to infer that some of those things necessarily occurred prior to the IPO, without allegations of fact supporting such an inference. For example, Planitiff [sic] argues that "in August 2014, just two months after the IPO, the Company manufactured 40,000 LED lamps with a false UL certification pursuant to Yan's direct order." Opp. 11, Doc #: 40 (internal quotation marks omitted). This allegation may be consistent with ongoing corporate disregard for quality control, but, absent significant additional facts, forty thousand offending bulbs produced in August does lead to an inference of misbehavior and consequent misstatements occurring during or before June. In fact, given that TCP is alleged to produce more than one million CFL bulbs per day, Cons. Compl. ¶ 36, these facts may support an inference of a misbehavior time-frame much shorter than two months.

(Doc. #: 43, p. 5). The Court granted Plaintiff leave to amend the complaint to cure the deficiency.

\\

\\

\\

\\

*C. Plaintiff's Second Amended Complaint*

On October 28, 2015, Plaintiff filed the Second Amended Complaint,[3] which was similar to the first but included additional factual allegations to support its claims that the Offering Materials contained material misstatements and omissions under Sections 11 & 12(a)(2). (Doc. #: 45). Plaintiff also alleged new causes of action under Sections 10(b) and 10b-5 of the Exchange Act.

In order to cure the deficiencies related to claims under Sections 11 & 12(a)(2), Plaintiff offered the following new factual allegations in the Complaint:

> 45. Specifically, the Company utilized "golden samples" for testing purposes. A "golden sample" is used in the lighting industry to refer to a sample product that has been built and tested to ensure that it will receive UL certification. It is supposed to be representative of the product that will later be mass produced once it is approved. It is improper to knowingly build a superior sample in order to receive UL listing if the mass produced product will be inferior. With Defendant Yan at the helm, however, TCPI used "golden samples" made with quality material (and presumably, more likely to meet industry standards and perform well when tested), but then used inferior materials when the products were mass produced.
>
> * * *
>
> 47. The fact that TCPI was building products before the proper UL certifications had been received was a topic of various discussions within the Company; in fact, Defendant Yan directed team members on several occasions to begin building products prior to receipt of UL certifications. Meeting attendees would question the legality of Defendant Yan's directive. They would further comment that building products prior to the receipt of UL listings or appropriate certifications "should not be done." Notwithstanding, whether building products prior to receiving UL certifications was proper and/or legal was of no moment to Defendant Yan, who took the view that it could be done and should be done.
>
> * * *

---

[3] As the operative pleading, the Second Amended Complaint is hereinafter referred to as "the Complaint."

> 81. The statements in the Offering Materials were materially misleading because they failed to disclose that: (a) the Company was manufacturing "high quality" and "energy efficient" lighting fixtures and labeling those products with UL and Energy Star® approval when no such approvals had been received; (b) as would later be revealed, Defendant Yan was circumventing corporate policies that impacted the manufacturing and quality control processes of these products which undermined the Company's standards and practices, such as "[b]ypassing regulatory (UL, CE, EnergyStar [sic], etc.) and supplier certification processes," and "[o]verriding and/or disregarding Company policies on matters such as…product design and safety certification;" (c) as the Company would ultimately admit in its 2014 10-K, Defendant Yan's "actions were inconsistent with setting an appropriate tone at the top by failing to adhere to the Company's established policies and procedures;" (d) Defendant Yan's improper "tone at the top" predated both the IPO and the Hauser Action, as was memorialized in the police report filed by Hauser following an acrimonious meeting with Defendant Yan regarding his misconduct, which details Defendant Yan's "explosive" temper; and (e) the material weaknesses in its internal controls Defendants

(Doc. #: 45, ¶¶45, 47, 81).  To further support the claim that Defendant Yan was routinely engaging in misconduct, Plaintiff provided evidence of an altercation that occurred between Defendant Yan and Ms. Hauser in the form of a police report that was filed with the Cleveland Heights Police Department.  (Doc. #: 45-2).  In the Report, Ms. Hauser described Defendant Yan's "explosive temper" and "anger and aggression" toward her.  (*Id.*).

> *D. Defendants' Motion to Dismiss the Second Amended Complaint*

On December 14, 2015, Defendants filed a motion to dismiss the Complaint (Doc. #48), which Plaintiff opposed.  (Doc. #: 50).  On February 25, 2016, the Court entered an order granting the motion and dismissing Plaintiff's Complaint with prejudice.  (Doc. #: 53).  The Court concluded that Plaintiff's new allegations failed to cure the deficiencies of the Consolidated Amended Complaint.  Specifically, the Court rejected as irrelevant Plaintiff's allegations of Defendant Yan's misconduct, including his "verbally abusive and demeaning" attitude, his "improper tone at the top," and his "explosive temper" as described by the police

-8-

report.  (*Id.* at 7-8).  The Court concluded that these particular allegations related to corporate mismanagement and as a consequence were inactionable under the securities laws. (*Id.*).

Additionally, the Court rejected Plaintiff's other new allegations because "Plaintiff add[ed] no wrongful acts that are alleged to have predated the IPO."  "Absent such allegations," the Court stated, "there is no wrongdoing for the Defendants to have misrepresented or omitted in the June 2014 Registration Statement and Prospectus." (*Id.* at 9).

As for Plaintiff's new claims under Section 10(b) and Rule 10b-5 of the Exchange Act, the Court rejected Defendants' argument that the addition of the claims exceeded the Court's grant of leave to amend.  Nonetheless, the Court ruled that the claims were insufficiently pled, observing that "Plaintiff does not allege material facts or events that occurred prior to the IPO, and therefore fails to establish a material misrepresentation or omission."  (*Id.* at 12).

Plaintiff now moves the Court for reconsideration of its judgment.

**II. Federal Rules 59(e), 60(b)(1) and 60(b)(6)**

"The purpose of [a] Rule 59(e) [motion] is to allow the district court to correct its own errors, [thus] sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (internal quotation marks omitted) (citation omitted).  Although Rule 59 permits a party to move for reconsideration in certain circumstances, it does not allow a party to simply reargue its case.  *Dorger v. Allstate Ins. Co.*, No. 2:08-56-DCR, 2009 WL 2136268, at *1 (E.D. Ky. July 16, 2009).  Under Rule 59(e), a court may alter or amend its judgment: (1) to accommodate an intervening change in controlling law; (2) to consider newly discovered evidence; or (3) to prevent a clear error of law or a manifest injustice.  *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.

1999).  In order to show "clear error," a party must not only "establish that errors were made, but that these errors were so egregious that an appellate court could not affirm the judgment." *Dorger*, 2009 WL 2136268, at *1-2.

Rules 60(b)(1) and (b)(6) allow a court to grant relief from judgment for "mistake, inadvertence, surprise, or excusable neglect" or when "any other reason [] justifies relief." Fed.R.Civ.P. 60(b)(1), (b)(6).  If a movant relies on allegations of legal error to support its motion for relief from judgment, the motion should be "premised on the category of mistake under Rule 60(b)(1)."  *Taylor v. Postmaster Gen., U.S. Postal Serv.*, 88 F. App'x 917, 919 (6th Cir. 2004).  Rule 60(b)(6) applies only in circumstances not addressed by the other provisions of the Rule and only in "unusual and extreme situations where principles of equity mandate relief." *In re Ferro Corp. Deriv. Litig.*, 511 F.3d 611, 623 (6th Cir. 2008).  "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Id.* Moreover, a movant fails to demonstrate entitlement to relief under any subsection of 60(b) when he simply rephrases his prior allegations.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 543 (6th Cir. 2004).

**III. Federal Rule 12(b)(6)**

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.  *See Shoup v. Doyle*, 974 F.Supp.2d 1058, 1071 (S.D. Ohio 2013) (citing *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012).  A court need not, however, credit bald assertions, legal conclusions, or unwarranted inferences.  *Kavanagh v. Zwilling*, 578

Fed.Appx. 24 (2d Cir. Sep. 17, 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Twombly*, 550 U.S. at 570. The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Id*. at 555.  Although Rule 12(b)(6) does not impose a probability requirement at the pleading stage, a plaintiff must present enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted).  Simply reciting the elements of a cause of action does not suffice.  *Iqbal*, 556 U.S. at 678.

### IV. Law and Argument

#### A. Plaintiff's Claims under Sections 11 and 12 of the Securities Act

Section 11 of the Securities Act provides:

> In case any part of [a] registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may ... sue—(1) every person who signed the registration statement; (2) every person who was a director of ... or partner in the issuer at the time of the filing[;] ... [and] (5) every underwriter with respect to such security.

15 U.S.C. § 77k(a). Section 12(a)(2), in turn, permits a plaintiff to sue "[a]ny person" who "offers or sells a security ... by means of a prospectus ... which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77l(a)(2).

-11-

"Claims under sections 11 and 12(a)(2) are ... Securities Act siblings with roughly parallel elements." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir.2010). "So long as a plaintiff establishes one of the three bases for liability under these provisions—(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing disclosures from being misleading—then, in a Section 11 case, the general rule is that an issuer's liability ... is absolute." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715-16 (2d Cir. 2011) (citation and internal quotation marks omitted). "[U]nlike securities fraud claims pursuant to section 10(b) of the Securities Exchange Act of 1934, plaintiffs bringing claims under sections 11 and 12(a)(2) need not allege scienter, reliance, or loss causation." *Morgan Stanley Info. Fund*, 592 F.3d at 359 (citation omitted).

Because claims under Sections11 & 12(a)(2) need not include allegations of fraud, "this is an ordinary notice pleading case, subject only to the 'short and plain statement' requirements of Federal Rule of Civil Procedure 8(a)." *Litwin*, 634 F.3d at 715.

In the present case, Plaintiff alleged that TCP made material misstatements when it made assertions about its commitment to quality control and the production of UL and Energy Star certified products. The pivotal issue on Defendants' motion to dismiss was whether Plaintiff had alleged facts by which it could be reasonably inferred that the alleged misstatements were untrue at the time of the IPO or that the alleged omissions related to facts known to Defendant at that same time. The Court previously answered these questions in the negative, because the facts that Plaintiff asserted to support the inference either (1) were deemed irrelevant (e.g. the allegation of an "improper tone at the top") or (2) were found to be related to the time period following the

IPO (e.g. allegation that Defendant Yan authorized falsely labeling 40,000 bulbs in August 2014). Because the Court determined that no relevant pre-IPO instances of wrongdoing had been pled, it concluded that it could not reasonably infer that the Offering Materials contained any misstatement or that the Offering Materials omitted a material fact that could have been known to Defendants at the time of the IPO.

Having carefully reconsidered these issues in light of the parties' arguments on Plaintiff's Rule 60 motion, the Court now reverses its previous judgment. First, Plaintiff correctly observes that the Court overlooked allegations related to TCP's 2014 10-K report. According to the Complaint, the 2014 10-K "covered the Company's entire fiscal year." (Doc. #: 45, ¶67). Accepting this allegation as true for present purposes, it is necessarily the case that the findings described in the Report existed at the time of, and prior to, the IPO, which occurred on June 25, 2014. The findings in the 10-K included,

> that "due to a material weakness in our internal control over financial reporting . . . our disclosure controls and procedures were not effective."
>
> Our Chief Executive Officer's actions were inconsistent with setting an appropriate tone at the top by failing to adhere to the Company's established policies and procedures. Our Chief Executive Officer bypassed reporting lines established to enable the execution of authorities and responsibilities, which facilitate the flow of information to manage the activities of the Company and ensures that financial reporting matters could be adequately evaluated in a timely manner.
>
> Structural and management circumstances at the Company, generally centered on the Chief Executive Officer's ubiquitous and highly personalized approach to running the Company, need to be rectified.
>
> Despite a long history of designing and manufacturing quality products, the Company would benefit from improvements in its process for securing and documenting UL listings for its products.

(*Id.*, ¶¶65-66).

-13-

The findings reported in TCP's 10-K, being applicable to the year 2014, reasonably support the idea that the Company was experiencing irregularities at the time of the IPO, which undermine the veracity of the statements being challenged in the Offering Materials.  For instance, the CEO's failure to adhere to policy and procedure, the need to rectify "structural and management" problems arising from the CEO's management style, and, in particular, the recognized need for improving the process for securing UL listings all reasonably support the claim that TCP was misrepresenting its commitment to quality control and the production of certified products.  Additionally, with respect to the claim that TCP omitted material facts from the Offering Materials, a disclosure of the issues identified in the 2014 10-K would have been necessary to prevent the disclosures that were made from being misleading.

The combination of TCP's 10-K admissions, which covered the 2014 calender year, and the numerous specific instances of alleged post-IPO misconduct on the part of Defendant Yan create a reasonable inference of material misconduct pre-IPO.  Yan's post-IPO actions, which are entirely consistent with the alleged pre-IPO conduct, include Defendant Yan's alleged authorization of the manufacture of 40,000 falsely labeled light bulbs in August 2014, the mislabeling of 900,000 LED bulbs with a UL mark, and the company use of so-called Golden Samples for testing purposes.  While all occurring post-IPO, these examples demonstrate a pattern of questionable behavior on the part of Defendant Yan.  When viewing the constellation of allegations of misconduct, it can be reasonably inferred that this pattern is illustrative of the pre-IPO "structural and management" problems, the problems with securing UL certification, and the failure to adhere to policy and procedure, which the Company admitted to in the 2014 10-K report.

As it did previously, the Court again rejects as irrelevant a number of allegations relating to Defendant Yan's demeanor. In particular, the allegations relating to Defendant Yan's "improper tone at the top" and Ms. Hauser's concerns about Yan's business practices amount at most to mere corporate mismanagement and are inactionable under the securities laws. (See Doc. #: 53, p. 7).

The Court concludes that Plaintiff has pled sufficient facts to demonstrate the materiality of the alleged misstatements and omissions. A misrepresentation or omission is material if a reasonable investor would have considered it significant. *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988). Undisclosed information is considered material if "there is a substantial likelihood that the disclosure would have been viewed by the reasonable investor as having 'significantly altered the "total mix" of information' available to that investor." *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 714 (3d Cir.1996) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). "[A] complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance." *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 162 (2d Cir.2000).

In this case, TCP indicated that its UL and Energy Star approvals and "commitment to quality assurance and control through every stage of the production" were critically important. (Doc. #: 45, ¶¶33, 76). At this procedural posture, the Court is persuaded that a reasonable investor in TCP would find these things important as well. As for the materiality of the alleged omissions, the Court is also persuaded. There is little question that the issues revealed in the 10-K were material, since the Audit Committee indicated that it found a "material weakness."

Moreover, the "total mix" of information would have been significantly altered for the reasonable investor if it had been revealed that TCP was suffering from "structural and management" problems arising from the practices of the CEO; or that TCP needed to improve its process for securing UL certification; or that the CEO had demonstrated a failure to adhere to policy and procedure.

As it did in its previous Order issued September 30, 2015, the Court again rejects Defendants' puffery arguments. At the motion to dismiss stage, it is not necessary that all or even most alleged statements be more than mere puffery, and consequently the Court need not presently discuss which alleged statements may or may not be puffery.

In sum, the Court concludes that Plaintiff has pled sufficient facts in the Second Amended Complaint to support its claims under Section 11 and 12(a)(2) of the Securities Act.

### B. Plaintiff's Exchange Act Claims

The Complaint alleges that Defendants continued to make material misstatements and omissions in violation of Section 10(b) of the Exchange Act and Rule 10b-5, even after the Offering Materials were filed. As noted in Plaintiff's motion for reconsideration, the Court did not address these claims in its Opinion and Order dismissing the Second Amended Complaint. Therefore, the Court will do so now.

In order to state a claim under §10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

The PSLRA's "[e]xacting pleading requirements" obligate a plaintiff to "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs*, 551 U.S. at 313. If even "one of [the plaintiff's] allegations [satisfies] the PSLRA's pleading standard," then the complaint must survive. *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 541, 596 (N.D. Ohio 2004). A securities fraud claim may not be dismissed based on a court's disbelief of the facts alleged. *Bridgestone*, 399 F.3d at 665.

In this instance, Defendants did not dispute that the scienter element is satisfied as to Defendant Yan, and there was no dispute that third, fourth, and fifth elements are also satisfied. Thus, the only questions on this claim are, one, whether Plaintiff has adequately pled the first element – material misrepresentation or omission – and, two, whether Plaintiff has sufficiently alleged scienter as to Defendant Catlett.

*1. Material Misrepresentation*

As for the first element, the Complaint alleges that on August 7-8 and November 7, 2014, the TCP Defendants touted, in post-IPO SEC filings, press releases, and conference calls, the Company's high quality products ("high quality energy efficient lamps, fixtures and internet-based lighting control solutions") (Doc. #: 45, ¶¶115-117, 119); Energy Star-compliant products ("we have established the largest number of Energy Star compliant light products for LEDs and CFLs combined") (*Id.*, ¶¶116-17, 19); and effective, unchanged internal controls. (*Id.*, ¶¶118, 120).

The primary issue here, as with Plaintiff's Securities claims above, is whether the Complaint contains sufficient allegations by which it can be inferred that the above assertions

-17-

were false or misleading at the time they were made. Upon review of the Complaint, the Court answers this question in the affirmative. These statements were misleading because they failed to disclose that TCP was mislabeling products as Energy Star and UL-approved (*Id.*, ¶¶44-47, 50-58, 121). At least one instance of mislabeling was alleged to have occurred prior to November 7, 2014. Therefore, this is a fact that would have been known to Defendant Yan and TCP at the time the statements were made on November 7.

It is reasonable to infer that prior to August 7, Yan was circumventing internal policies and procedures, which adversely impacted the Company's quality control and resulted in products being mislabeled as Energy Star and UL-approved (*Id.*, ¶¶44-47, 50-58, 62-68, 121). These are material facts that a reasonable investor would have considered significant. Further Plaintiff has established that TCP's claim that it possessed "effective, unchanged internal controls" is materially false or misleading based on the Company's admission in the 2014 10-K that its internal controls suffered from a "material weakness."

*2. The Scienter Element*

As noted above, Defendants did not challenge the element of scienter with respect to Defendant Yan but do raise the issue with respect to Defendant Catlett. (Doc. #: 48-1, pp. 30-31). To prevail on its Exchange Act claims against Defendant Catlett, Plaintiff must adequately plead particular facts giving rise to a "strong inference" that this defendant acted with the state of mind required under PSLRA. 15 U.S.C. § 78u-4(b)(2).  The inference may arise from allegations of a "knowing and deliberate intent to manipulate, deceive, or defraud" or recklessness, defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary

care [and] so obvious that any reasonable man would have known of it." *Frank v. Dana Corp.*, 646 F.3d 954, 958-59 (6th Cir. 2011).

Plaintiff has failed to plead particular facts showing that Defendant Catlett acted with the requisite state of mind. The mere fact that Defendant Catlett was CFO is insufficient. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) ("plaintiffs may plead scienter in § 10b or Rule 10b–5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud."). If anything, Plaintiff's allegation that Catlett expressed objections to Yan's directive to label 40,000 LED lamps with a UL mark before actually receiving UL certification establishes that Catlett had no intent to defraud.

Because Plaintiff has not adequately pled scienter as to Defendant Catlett, the Section 10(b) and Rule 10b-5 claims against him are dismissed.

On the other hand, these claims may proceed with respect to Defendant Yan. Additionally, because the Court is persuaded that Plaintiff has adequately pled material misstatements and omissions based on statements made in the Offering Materials, *see supra* pp. 12-16, Plaintiff's claims against Defendant Yan may proceed on that factual basis as well.

**C. Claims under Section 15 of the Securities Act and Section 20(a) under the Exchange Act**

In its Opinion and Order dated February 2, 2016, the Court dismissed Plaintiff's claims for control person liability under Section 15 of the Securities Act and Section 20(a) of the Exchange Act**,** on the ground that Plaintiff failed to plead underlying violations. As described above, the Court has determined on reconsideration that Plaintiff has adequately stated underlying claims pursuant to Sections 11 & 12(a) of the Securities Act and Section 10(b) and

-19-

Rule 10b-5 of the Exchange Act. As a consequence, Plaintiff's claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act are revived.

### IV. Conclusion

For the reasons stated above, Plaintiff's motion to reconsider and vacate, set aside, alter or amend judgment (Doc. #: 55) is granted.  The Court's judgment (Doc. #: 54) is vacated, and Plaintiff's Second Amended Complaint (Doc. #: 45) is reinstated, except with respect to Plaintiff's Exchange Act claims against Defendant Catlett.

**IT IS SO ORDERED.**

**Date:  4/27/2016**                                              **/s/ Dan Aaron Polster**
                                                                                **United States District Judge**